## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE SHAWNEE TRIBE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 20-cv-1999 (APM) |
| | ) |
| STEVEN T. MNUCHIN, in his official capacity | ) |
| as Secretary of Treasury, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION

### I.

On May 5, 2020, the Department of Treasury announced that it would rely on "Tribal population data used by the Department of Housing and Urban Development (HUD) in connection with the Indian Housing Block Grant (IHBG) Program" to allocate and distribute a portion of the $8 billion that Congress set aside for "Tribal governments" under Title V of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act").[1]  In this action, Plaintiff Shawnee Tribe challenges the Treasury Secretary's decision to use the IHBG data as arbitrary and capricious in violation of the Administrative Procedure Act ("APA").  *See* Compl., ECF No. 2, ¶¶ 42–59.[2]

On August 19, 2020, this court denied Plaintiff's motion for an order preliminarily enjoining the Secretary from paying out $12 million in undistributed CARES Act funds. *See Shawnee Tribe v. Mnuchin*, No. 20-cv-1999 (APM), 2020 WL 4816461, *1 (D.D.C. Aug. 19,

---

[1] U.S. DEP'T OF TREASURY, Coronavirus Relief Fund Allocations to Tribal Governments (May 5, 2020), at 2, available at   https://home.treasury.gov/system/files/136/Coronavirus-Relief-Fund-Tribal-Allocation-Methodology.pdf   (last accessed on September 10, 2020).
[2] The court incorporates by reference the factual background pertaining to Title V set forth in *Agua Caliente Band of Cahuilla Indians v. Mnuchin*, No. 20-cv-01136 (APM), 2020 WL 2331774 (D.D.C. May 11, 2020), and *Confederated Tribes of Chehalis Reservation v. Mnuchin*, No. 20-cv-01002 (APM), 2020 WL 1984297 (D.D.C. Apr. 27, 2020).

2020).  The court ruled that Plaintiff had not demonstrated a substantial likelihood of success, because the Secretary's allocation of the lump-sum CARES Act appropriation was a non-reviewable agency action under the APA.  *See id.* at *1.  Now before the court is Defendants' Motion to Dismiss Plaintiff Shawnee Tribe's Complaint under Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6).  *See* Defs.' Mot. to Dismiss, ECF No. 45 [hereinafter Defs.' Mot.].  For the same reason the court declined to grant preliminary relief, and for those that follow, the court dismisses Plaintiff's Complaint.

## II.

This is the second case to come before this court challenging the Secretary's allocation of funds for "Tribal governments" under Title V of the CARES Act.  In the first case, the Prairie Band Potawatomi Nation argued that the Secretary's decision to rely on HUD's IHBG population data set was arbitrary and capricious because it undercounted the tribe's actual population. *See generally Prairie Band Potawatomi Nation v. Mnuchin*, No. 20-cv-1491 (APM), 2020 WL 3402298 (D.D.C. June 11, 2020).  The court denied the Prairie Band plaintiff's motion for preliminary relief in part on the merits, holding that the Secretary's decision was an unreviewable agency action under the APA, *see id.*, and on July 9, 2020, plaintiff voluntarily dismissed the case, *see* Notice of Voluntary Dismissal, *Prairie Band Potawatomi Nation v. Mnuchin*, No. 20-cv-1491 (D.D.C. July 9, 2020), ECF No. 30.

Like the *Prairie Band* plaintiff, Plaintiff in this case challenges the manner in which the Secretary allocated a portion of the $8 billion.  Plaintiff argues that the Secretary's decision to rely on the IHBG data was arbitrary and capricious because the IHBG data "was 'objectively false' [since] it counts the Shawnee Tribe as having zero enrolled members when, in fact, the Tribe has more than 2,113 tribal citizens."  *Shawnee Tribe*, 2020 WL 4816161, at *1.

2

### III.

To survive a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In the context of the APA, where "a complaint seek[s] review of agency action 'committed to agency discretion by law,' 5 U.S.C. § 701(a)(2), [it] fail[s] to state a claim under the APA, and therefore should be dismissed under Rule 12(b)(6)," *Sierra Club v. Jackson*, 648 F.3d 848, 854 (D.C. Cir. 2011).  The question presented here is whether the manner in which the Secretary allocated Title V funds amongst the various Tribal governments was "committed to agency discretion by law."  *See id.*  After multiple rounds of briefing and oral arguments on motions for preliminary relief in this case and in *Prairie Band*, the court has twice found the answer to that question to be "yes"—the Secretary's allocation methodology is not reviewable under the APA.  Plaintiff now asks the court to change its mind, but nothing Plaintiff has added to its argument persuades the court to do so.  The court continues to adhere to its conclusions and reasoning set forth in *Prairie Band*, 2020 WL 3402298, and *Shawnee Tribe*, 2020 WL 4816461, and incorporates those decisions here.  Any appellate review of the instant decision should be read in conjunction with those earlier rulings.  In the interest of judicial economy, the court here addresses only the additional arguments advanced by Plaintiff in opposition to Defendants' motion to dismiss.

*First*, Plaintiff points to additional cases it claims support its argument that the Supreme Court's decision in *Lincoln v. Vigil*, 508 U.S. 182 (1993), "does not apply" here.  Pl.'s Opp'n to Defs.' Mot., ECF No. 46 [hereinafter Pl.'s Opp'n], at 18–23.  *Vigil* held that as long as "an agency allocates funds from a lump-sum appropriation to meet permissible statutory objectives, § 701(a)(2) of the APA gives the courts no leave to intrude.  To that extent, the decision to allocate

funds is committed to agency discretion by law." *Prairie Band*, 2020 WL 3402298 at *1 (cleaned up) (quoting *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993)).  Plaintiff asserts that "ever since" *Vigil*, courts have been "distinguishing the review of agency decisions in the context of lump sum appropriations."  Pl.'s Opp'n at 18.  The additional cases Plaintiff cites to prop up its argument on this point, however, are clearly distinguishable.

In *Ramah Navajo School Board Inc. v. Babbit*, the D.C. Circuit found "a plan initiated by the Secretary of the Interior for disbursing fiscal year 1995 contract support funds appropriated by Congress for distribution to Native American Tribes as required by the Indian Self–Determination Act" ("ISDA") was reviewable, where the "text and structure of the ISDA" evinced clear congressional intent to "limit the Secretary's discretion in funding matters and to provide for judicial review of all of the Secretary's actions."  87 F.3d 1338, 1340, 1347 (D.C. Cir. 1996). There, the statute specified an "indirect cost rate" formula, which "dictate[d] the amount of [funds a] Tribe [was] entitled to receive."  *Id.* at 1341.  Here, in sharp contrast, Title V of the CARES Act provides that allocation of funds to Tribal governments would be "determined in such manner as the Secretary determines appropriate." 42 U.S.C. § 801(c)(7).  As the court previously observed, "[f]ar from cabining the Secretary's discretion, Congress codified it."  *Shawnee*, 2020 WL 4816161, at *3.

The Tenth Circuit's holding in *Mount Evans Co. v. Madigan*, 14 F.3d 1444 (10th Cir. 1994), is similarly inapposite.  There, plaintiffs challenged a United States Forest Service "decision not to rebuild a structure located on Forest Service lands which was destroyed by fire."  *Id.* at 1447. In distinguishing *Vigil*, the *Madigan* court observed that the statute upon which the plaintiffs based their cause of action expressly limited the discretion of the Forest Service.  *Id.* at 1449.  The statute required that the Forest Service "first ensure that *necessary* improvements to the damaged

property" were made before spending the money on anything else.  *Id.* at 1450.  The *Madigan* court distinguished the wording of the operative statute in that case from that at issue in the Supreme Court's decision in *Webster v. Doe*, 486 U.S. 592 (1989).  In *Webster*, the Court found unreviewable a statute that "allowed termination of a CIA employee whenever the Director 'shall *deem* such termination necessary or advisable in the interests of the United States.'"  *Id.* (quoting *Webster*, 486 U.S. at 600).  The *Madigan* court noted that unlike the statute in *Webster*, the statute governing the Forest Service's action "use[d] the word *necessary* without any deference to the Forest Service's determination of what is necessary."  *Id.*  Title V of the CARES Act  is more akin to the statute in *Webster*, not *Madigan*.  Its provision that "the amount paid . . . to a Tribal government shall be . . . *determined in such manner as the Secretary determines appropriate* . . . ," 42 U.S.C. § 801(c)(7) (emphasis added), "exudes deference to the [Secretary]," and therefore "foreclose[s] the application of any meaningful judicial standard of review," *Webster*, 486 U.S. at 600.

*Second*, Plaintiff maps out the various limitations it sees within Title V as providing a judicially reviewable standard.  *See* Pl.'s Opp'n at 20–22.  That mapping exercise identifies one judicially manageable standard already identified by this court.  *See Confederated Tribes of Chehalis Rsrv. v. Mnuchin*, No. 20-cv-01002 (APM), 2020 WL 1984297, *5 (D.D.C. Apr. 27, 2020) (holding that Title V "circumscribed the agency's discretion by supplying a concrete definition of 'Tribal government' against which to measure eligibility for Title V funds").  But Plaintiff points to no statutory limitation on the exercise of discretion that it actually challenges in this lawsuit—the Secretary's chosen methodology for determining *how much* funding to disburse to Tribal governments.  Plaintiff contends that, because Defendants have "arguably interpreted the term 'increased expenditure' [in 42 U.S.C. § 801(c)(7)] to include the concept of tribal

population," the Secretary's choice of the IHBG data is somehow reviewable.  Pl.'s Opp'n at 22.

But even if an instruction to allocate funds "based on increased expenditures" could be read as a

statutory constraint of some kind, Title V cannot be reasonably read to place any restriction on

*how* the Secretary must allocate the $8 billion to achieve that goal.  Once again, Congress provided

that the allocation is to be "determined in such manner *as the Secretary determines appropriate* to

ensure" that all appropriated Title V funds are distributed to Tribal governments.  42 U.S.C.

§ 801(c)(7) (emphasis added).  Such clear discretionary language does not provide a "judicially

manageable standard[]."  *Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634, 643 (D.C. Cir. 2020).

*Third*, Plaintiff claims that "[a] lump sum appropriation may avoid judicial review under

5 U.S.C. 702(a)(2) only where, with no law to apply, policy reasons ***also*** support the determination

that the funding decision is committed to agency discretion by law."  Pl.'s Opp'n at 23.  Plaintiff

provides no authority to support its policy-focused test, and the court declines to adopt one where,

as here, Congress has expressly evinced intent to leave the determination of how to allocate

funding to the Secretary's discretion.

*Fourth* and finally, Plaintiff renews its argument that, by first electing to use Tribal

population as a proxy for "increased expenditures," the Secretary cabined his own discretion and

made reviewable his secondary decision to use the IHBG data.  *Id.* at 28–30.  But as stated in the

court's Opinion and Order denying preliminary relief, the factual premise of that argument—that

the Secretary engaged in bifurcated decision-making—is dubious, as the Secretary announced the

decision to use population as a proxy for "increased expenditures" and the IHBG data set in the

same May 5, 2020 announcement.   Plaintiff's parsing of the separate headings in that

announcement as evidence of separate decision-making, *see id.* at 8, is unconvincing, and Plaintiff

points to nothing else that would show that the Secretary's decision-making was in fact "bifurcated."

Plaintiff also points to "informal policy statements" to buttress its position that the Secretary cabined his own discretion, specifically a Treasury official's statement during a telephone conference with tribal leaders that "Treasury want[s] . . . a fair and transparent method for allocating these funds." Pl.'s Opp'n at 28–29 (quoting Exhibit A, lines 15:6-8). But Plaintiff cites no case for the proposition that such an informal, aspirational representation can provide a "judicially manageable standard[]." *Physicians for Soc. Resp.*, 956 F.3d at 643 (stating that "judicially manageable standards may be found in formal and informal policy statements and regulations as well as in statutes"). The cases on which Plaintiff relies are inapposite. *See* Pl.'s Opp'n at 27–28. The court in *Moncrief v. U.S. Department of Interior*, 339 F. Supp. 3d 1, 6 (D.D.C. 2018), did not address the issue of reviewability, but in any event, in that case there were not only clear statutory limits on the agency's authority, the agency also had promulgated regulations governing the activity at issue. *Id.* at 5. Nor is the New Mexico district court's decision in *New Mexico Health Connections v. U.S. Department of Health & Human Services* persuasive, where the agency action at issue was bound up in a complex regulatory regime. 340 F. Supp. 3d 1112, 1122–24 (D.N.M. 2018). In sum, as the court previously held, "the selection of the HUD tribal population data set is no more reviewable than the initial decision to use population as a proxy for increased expenditures." *Shawnee Tribe*, 2020 WL 4816161, at *3.

\*       \*       \*

Because the court finds that neither the language of the CARES Act nor the agency's own regulations or policies provide "judicially manageable standards" to cabin the otherwise plenary discretion afforded to the Secretary under Title V, it concludes that Plaintiff's challenge to the

Secretary's decision to use IHBG data was "committed to agency discretion by law" and therefore is not reviewable under the APA.  5 U.S.C. § 701(a)(2).  Plaintiff's claim therefore must be dismissed under Federal Rule of Civil Procedure 12(b)(6).  *See Sierra Club*, 648 F.3d at 854.[3]

### III.

Accordingly, Defendants' Motion to Dismiss Plaintiff's Complaint is granted.  A separate final order accompanies this Memorandum Opinion.

Dated:  September 10, 2020

Amit P. Mehta
United States District Court Judge

---

[3] The court does not reach Defendant's alternative argument that dismissal is warranted under Rule 12(b)(6) because the Secretary's chosen allocation methodology was not arbitrary and capricious.  See Defs.' Mot. at 2.