UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE SHAWNEE TRIBE, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 20-cv-1999 (APM) |
| JANET L. YELLEN,[1] in her official capacity as Secretary of the Treasury, et al., | ) | |
| Defendants. | ) | |
| THE MICCOSUKEE TRIBE OF INDIANS OF FLORIDA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 20-cv-2792 (APM) |
| UNITED STATES DEPARTMENT OF THE TREASURY, et al., | ) | |
| Defendants. | ) | |
| PRAIRIE BAND POTAWATOMI NATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 21-cv-0012 (APM) |
| JANET L. YELLEN, in her official capacity as Secretary of the Treasury, et al., | ) | |
| Defendants. | ) | |

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes the current Secretary of the Treasury as the defendant in this case.

## MEMORANDUM OPINION AND ORDER

The Plaintiff Tribes in this consolidated action seek a preliminary injunction directing the Secretary of the Treasury to make an immediate interim payment of undistributed funds under Title V of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act.[2] This is the second preliminary injunction sought by Plaintiffs. They first individually requested orders enjoining the Secretary from distributing Title V funds[3] to which they claim entitlement.[4] Pursuant to the D.C. Circuit's decision and instruction in *Shawnee Tribe v. Mnuchin*, 984 F.3d 94 (D.C. Cir. 2021), the court entered an injunction in favor of Plaintiff Shawnee Tribe on January 14, 2021, that requires Treasury to withhold $12 million in Title V funds from further disbursement pending resolution of the Shawnee Tribe's claims on the merits. *See* Order, ECF No. 55. The motions filed by Plaintiffs Miccosukee Tribe and Prairie Band Potawatomi Nation remain pending before the court.

Plaintiffs now jointly request an order requiring the Secretary to make an immediate interim payment to each Plaintiff from the remaining Title V funds and mandating that the amount of those interim payments be (1) based upon a rational consideration of the Tribes' population and (2) in line with the amount previously distributed to other Tribes similar in size. *See* Pls.' Joint Mot. for Prelim. Inj., ECF No. 65 [hereinafter Pls.' Mot.], at 8. Plaintiffs rest their demand for injunctive relief on two claims under the Administrative Procedure Act ("APA"): (1) that Treasury's population-based methodology for determining the allocation of Title V funds was

---

[2] Title V of the CARES Act appropriated $8 billion "for making payments to . . . Tribal governments," 42 U.S.C. § 801(a)(1); *id.* § 801(a)(2)(B), for "necessary expenditures incurred due to the public health emergency with respect to [COVID-19]," *id.* § 801(d)(1).

[3] The bulk of the approximately $535 million in remaining funds were previously allocated to Alaska Native Corporations ("ANCs"). The ANCs' eligibility to receive Title V funds is dependent on a forthcoming decision by the Supreme Court. *See Yellen v. Confederated Tribes of the Chehalis Rsrv.*, Nos. 20-543 & 20-544.

[4] *See* Ex Parte Mot. for TRO, ECF No. 3; Pl.'s Expedited Mot. for Prelim. Inj. & Incorporated Mem. of Law, *Miccosukee Tribe of Indians of Fla. v. U.S. Dep't of Treasury*, No. 20-cv-2792 (APM) (D.D.C.), ECF No. 5; Mot. for Prelim. Inj., *Prairie Band Potawatomi Nation v. Yellen*, No. 21-cv-012 (APM) (D.D.C.), ECF No. 4.

arbitrary and capricious, *see* 5 U.S.C. § 706(2)(A), and (2) that Treasury's nonpayment of the full Title V funds to which the Tribes claim entitlement constitutes agency action "unlawfully withheld or unreasonably delayed," *id*. § 706(1).  *See* Pls.' Mot. at 1–3.

As explained more fully below, the court denies Plaintiffs' motion without prejudice. Although the D.C. Circuit held in *Shawnee Tribe* that Plaintiffs were likely to succeed on the merits of their arbitrary and capricious claim, *see* 984 F.3d at 102–03, the injunctive relief they presently seek is greater than the APA permits.  And as for their unreasonable delay claim, Plaintiffs have not established a substantial likelihood of success at the present time.  The agency has said that it will announce a revised methodology for allocating the remaining Title V funds within a matter of days—by April 30, 2021—and will disburse funds to Plaintiffs shortly thereafter.  *See* Hr'g Tr. (draft), Apr. 22, 2021 [hereinafter Hr'g Tr.], at 3–4; *see also* Status Report, ECF No. 62.  Although the court is sympathetic to the urgency of the matter, Treasury is making significant progress on a solution, which weighs against judicial intervention at this time.

The court will, however, grant the Miccosukee Tribe's and Prairie Band Potawatomi Nation's pending motions to enjoin Treasury's distribution of a combined $9,647,063 in remaining Title V funds pending resolution of this litigation or further order of the court.  Those injunctions will preserve the status quo and ensure that the disputed funds are not dissipated.

**I.**[5]

The court begins its discussion with the specific terms of the injunction Plaintiffs seek. Plaintiffs do not simply ask the court to force Treasury to make an interim payment, but direct the agency to determine a payment amount consistent with two guiding principles:  (1) that "Treasury must determine the Plaintiff Tribes' populations based upon a rational consideration of the

---

[5] The court presumes the parties' familiarity with the facts and procedural background and therefore does not extensively recite them here.

population information available to the agency (other than the [Indian Housing Block Grant ('IHBG')] data [previously used])," and (2) that "the interim distributions [] be the amounts previously distributed to other tribes with equivalent populations[,] minus an amount necessary to protect the interests of the other tribes and ANCs currently litigating CARES Act cases." Pls.' Mot. at 8. Plaintiffs argue that the court's "broad equitable authority" allows it to impose these "general legal boundaries" within which Treasury must act. *Id.* The court disagrees.

When an agency acts arbitrarily and capriciously, as Treasury is accused of doing here, the APA authorizes courts to "hold unlawful and set aside [the] agency action." 5 U.S.C. § 706(2)(A). Thus, "[u]nder settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be remanded to the agency for further action consistent with the corrected legal standards." *PPG Indus., Inc. v. United States*, 52 F.3d 363, 365 (D.C. Cir. 1995).

Plaintiffs rely on a narrow exception to this rule. The D.C. Circuit has held that "extraordinary circumstances" could justify a "detailed remedial order[]." *N.C. Fisheries Ass'n, Inc. v. Gutierrez*, 550 F.3d 16, 20 (D.C. Cir. 2008). Plaintiffs argue that such circumstances exist here due to the COVID-19 pandemic. *See* Pls.' Mot. at 5. But the D.C. Circuit has strongly implied that "extraordinary circumstances" are not "extraordinary" in the equitable sense urged by Plaintiffs, but rather they exist only when courts are permitted to "compel agency action" under section 706(1) of the APA. *See In re Long-Distance Tel. Serv. Fed. Excise Tax Refund Litig.*, 751 F.3d 629, 634 (D.C. Cir. 2014). That is, the court's authority to issue a detailed remedial order "applies only to '*discrete* action' that is 'legally *required* . . . about which an official had no discretion whatever.'" *Id.* (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004)); *see also Pub. Citizen, Inc. v. Fed. Energy Regul. Comm'n*, 839 F.3d 1165, 1172 (D.C. Cir. 2016)

4

("Action is 'legally required' if the statute provides a specific, unequivocal command to an agency or a precise, definite act . . . about which [an official has] no discretion whatever." (internal quotation marks omitted)).

That stringent standard is not satisfied here. The statutory provision that directs disbursement of CARES Act funds to Tribal governments, section 801(c)(7) of Title V, does not "specific[ally], unequivocal[ly] command" Treasury to adopt a methodology to allocate funds under any criteria other than (1) the "amount paid . . . to a Tribal government" must be "based on increased expenditures" and (2) "all amounts available . . . [must be] distributed to Tribal governments." 42 U.S.C. § 801(c)(7); *see Shawnee Tribe*, 984 F.3d at 100. Thus, as the D.C. Circuit observed, section 801(c)(7) "gives the Secretary some discretion" in carrying out Congress's directive. *Shawnee Tribe*, 984 F.3d at 100. Such "discretion forecloses the detailed order plaintiffs seek." *In re Long-Distance Tel. Serv.*, 751 F.3d at 634 (holding that it would have been inappropriate for the trial court to issue an order of compulsion where the statute at issue "afford[ed] the Secretary of Treasury great discretion to design the details").

At oral argument, Plaintiffs pointed to *Cobell v. Norton*, 240 F.3d 1081 (D.C. Cir. 2001), as the best case for their position, *see* Hr'g Tr. at 16, but *Cobell* does not help their cause. *Cobell* was a case involving the federal government's trust responsibilities toward Native Americans. 240 F.3d at 1097. After finding that the defendant agencies had breached their fiduciary duties, "the district court issued an order to compel . . . actions . . . unlawfully withheld or unreasonably delayed." *Id.* at 1107. As is relevant for our purposes, that order went beyond a simple remand. *See id.* Specifically, the district court retained jurisdiction over the matter to ensure the agency complied with its obligations on remand and also ordered the agency to revise its policy and file "quarterly status reports setting forth and explaining the steps" it was taking "to

5

rectify the breaches of trust declared by the court." *Id.* (internal quotation marks omitted). On appeal, the government argued that because it had "no clear, specific 'ministerial' duties," it was "excessive interference" for the district court to issue such mandatory injunctive relief. *Id.* at 1109. The Circuit affirmed. In doing so, the court made clear that its decision turned on the fact that the relief ordered by the district court was "relatively modest," and although it forced the government to "develop written policies and procedures," it did "*not tell the government what th[o]se procedures must entail.*" *Id.* (emphasis added). Plaintiffs here urge the court to do just the opposite. They ask the court to tell Treasury what its interim payment methodology "must entail." *Id. Cobell* is thus not helpful to Plaintiffs.

In sum, although "mandatory as to the object to be achieved," section 801(c)(7) of Title V "leaves [Treasury] . . . discretion in deciding how to achieve it." *Norton*, 542 U.S. at 66; *see Shawnee Tribe*, 984 F.3d at 100. "It assuredly does not mandate, with the clarity necessary to support judicial action," that Treasury distribute funds within the confines of Plaintiffs' requested guardrails. *Norton*, 542 U.S. at 66. Accordingly, the court cannot grant the extraordinary remedy that Plaintiffs demand.

## II.

The CARES Act does mandate action in one respect: it directs Treasury to disburse Title V funds within 30 days of March 27, 2020. 42 U.S.C. § 801(b)(1). Therefore, in theory, the court could issue a narrower injunction compelling Treasury to make *some* payment by a date certain. *See Agua Caliente Band of Cahuilla Indians v. Mnuchin*, No. 20-cv-1136 (APM), 2020 WL 3250701, at *4 (D.D.C. June 15, 2020) (compelling immediate payment of withheld Title V funds); Hr'g Tr. at 39 (Defendants agreeing that section 706(1) gives the court the authority to compel

6

"quicker agency action"). But such judicial intervention is not warranted in the present circumstances.

The court's analysis is governed by the D.C. Circuit's decision in *Telecommunications Research & Action Center v. FCC* (*TRAC*), 750 F.2d 70, 80 (D.C. Cir. 1984). *See Agua Caliente Band of Cahuilla Indians v. Mnuchin* (*Agua Caliente I*), No. 20-cv-1136 (APM), 2020 WL 2331774, at *5–8 (D.D.C. May 11, 2020) (applying *TRAC* factors to an undue delay claim involving a different tranche of Title V funds). Although some of the so-called *TRAC* factors tilt in Plaintiffs' favor, particularly the length of delay, *see In re Pub. Emps. for Env't Resp.*, 957 F.3d 267, 273–74 (D.C. Cir. 2020), "there is reason for the court to stay its hand for the time being," *In re Ctr. for Auto Safety*, 793 F.2d 1346, 1354 (D.C. Cir. 1986). The D.C. Circuit has refrained from interceding in cases where the agency has demonstrated progress in carrying out its responsibilities. *See id.* (rejecting mandamus relief where the agency had prescribed certain overdue fuel economy standards and had "made some progress" on another); *TRAC*, 750 F.2d at 72 (declining to grant mandamus relief "because the agency has assured us that it is now moving expeditiously"); *cf. Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 193 (D.C. Cir. 2016) (observing that, on remand, the district court might conclude that a writ of mandamus is "premature" if "Congress and the Secretary are making significant progress toward a solution"). Here, Treasury has said that it "is poised to finalize its new methodology by April 30 (at the latest), and will promptly make payments thereafter." Opp'n to Pls.' Second Mot. for Prelim. Inj., ECF No. 71, at 17; Hr'g Tr. at 3–4. Because Treasury has committed to making payment in the coming weeks, it makes little sense for the court to exercise its equitable authority and instruct the agency to make payment by a date certain.

As this court admonished in *Agua Caliente I*, however, the court's hesitancy to interfere with the agency's progress at this time does not mean Treasury "enjoys an indefinite period to carry out Congress's command." 2020 WL 2331774, at *8. Plaintiffs may renew their motion should Treasury fail to make good on its promise to distribute the Title V funds soon after finalizing the revised methodology.

### III.

The court will grant the limited injunctions sought by the Miccosukee Tribe and the Prairie Band Potawatomi Nation, as injunctive relief is needed to maintain the status quo. In *Shawnee Tribe*, the D.C. Circuit made clear that the Miccosukee Tribe—also assessed by Treasury as having zero population—is similarly situated to the Shawnee Tribe. *See* 984 F.3d at 102. The Miccosukee Tribe is therefore entitled to the same injunction as the Shawnee Tribe. And because Prairie Band Potawatomi Nation claims that Treasury's original methodology vastly undercounted its population, *see* Prairie Band Potawatomi Nation's First Am. Compl., ECF No. 67, ¶ 12, its legal claim is substantially similar, and thus warrants the same injunctive relief.

### IV.

For the foregoing reasons, the court denies, without prejudice, Plaintiffs' Joint Motion for Preliminary Injunction Directing Immediate Interim Distribution of CARES Act Funds, ECF No. 65.

The court grants the Miccosukee Tribe's and Prairie Band Potawatomi Nation's motions for injunctive relief. The court hereby preliminarily enjoins Defendant Janet L. Yellen, in her official capacity as Secretary of the Treasury, from distributing an additional $9,647,063 of the remaining funds available under Title V of the CARES Act for "Tribal governments," 42 U.S.C. § 801, except to the Miccosukee Tribe and Prairie Band Potawatomi Nation themselves, until a final judgment is entered in this matter, or upon an earlier order entered by the court.

Treasury shall file a Status Report on or before May 3, 2021, notifying the court of its revised methodology for distributing remaining Title V funds and its timeline for distributing funds to Plaintiffs under the revised methodology.

Dated: April 26, 2021

_____
Amit P. Mehta
United States District Court Judge