# Exhibit A

**Coronavirus Relief Fund**
**Allocations to Tribal Governments**
**April 30, 2021**

The Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") established the Coronavirus Relief Fund ("CRF"), reserved $8 billion from the CRF for payments to Tribal governments, and provided that the allocation of payments to Tribal governments is to be determined by the Secretary of the Treasury in consultation with the Secretary of the Interior and Tribes.[1]  As discussed further below, and in recognition of the recent federal court decisions addressing aspects of the methodology used to make prior payments, Treasury has engaged in a process of reconsidering the impact of that methodology on certain Tribes.  In the course of that process, Treasury has determined to adopt a methodology pursuant to which it will reallocate a portion of the remaining, unpaid funds reserved for Tribal governments.

The amount reserved for Tribal governments from the CRF is separate from the additional $20 billion reserved for Tribal governments from the Coronavirus State Fiscal Recovery Fund established by section 9901 of the American Rescue Plan Act of 2021.[2]  Those funds will be subject to a separate allocation to be announced by Treasury in the coming days.

*Previous allocation*

The CARES Act provides that the Tribal allocation is to be "based on increased expenditures of each such Tribal government (or a Tribally-owned entity of such Tribal government) relative to aggregate expenditures in fiscal year 2019 by the Tribal government (or Tribally-owned entity)" and "determined in such manner as the Secretary [of the Treasury] determines appropriate to ensure that all amounts" are distributed to Tribal governments.[3]

On May 5, 2020, Treasury adopted an allocation methodology pursuant to which 60% of the $8 billion reserved for Tribal governments was allocated to Tribal governments based on population, specifically by reference to the population of each Tribe's formula area under the Department of Housing and Urban Development (HUD) Indian Housing Block Grant (IHBG) program, with the remainder allocated in a manner based on the number of employees of Tribal governments and Tribal enterprises and the 2019 expenditures of Tribal governments.  Further information about these allocations was provided at the time by Treasury.[4]

*Recent litigation*

Three of the several Tribes that were assigned a population of zero, or a low population that approaches zero, for their IHBG formula areas despite having substantial enrollment have challenged the population-based disbursement of Treasury's allocation methodology in federal court.  Although these lawsuits have not been finally resolved, the U.S. Court of Appeals for the D.C. Circuit found that at least one Tribe assigned an IHBG formula area population of zero was likely to succeed in its claim that the prior

---

[1] *See* section 601(c)(7) of the Social Security Act, as added by § 5001(a) of Division A of the CARES Act (42 U.S.C. § 801(c)(7).

[2] Pub. L. No. 117-2 (March 11, 2021).

[3] *See* 42 U.S.C. § 801(c)(7).

[4] *See* Coronavirus Relief Fund Allocations to Tribal Governments (May 5, 2020), available at https://home.treasury.gov/system/files/136/Coronavirus-Relief-Fund-Tribal-Allocation-Methodology.pdf; Coronavirus Relief Fund Allocations to Tribal Governments (June 17, 2020), available at https://home.treasury.gov/system/files/136/Tribal-Allocation-Methodology-for-Second-Distribution.pdf (setting the employment-based allocation at 30% and the expenditure-based allocation at 10% of the total amount reserved for Tribal governments).

methodology was arbitrary and capricious as used to calculate the disbursement to that Tribe.[5]  On remand, the district court has issued orders finding that all three plaintiff Tribes have established a likelihood of success on their challenges to the methodology and has enjoined Treasury from disbursing roughly $21 million of the remaining funds previously allocated to Alaska Native corporations (ANCs).  Treasury has since indicated its intent to reallocate a portion of the remaining CRF funds reserved for Tribal governments pursuant to a new methodology that takes these decisions into account and to begin issuing payments promptly thereafter.

### Consultation process

In connection with this determination to reconsider the methodology, Treasury conducted consultations with Tribal governments, including two teleconferences with federally recognized Tribes and one teleconference with representatives from ANCs.  Treasury also appreciates the submissions made by Tribes and ANCs in response to Treasury's requests for information.  In these consultations, discussed further below, Tribal governments with zero or low formula area population numbers relative to their enrollment counts stated that the previous allocation did not provide sufficient funding to meet their pandemic-related needs.  Tribal governments also stated that they were providing substantial assistance to members outside of their formula areas.  ANCs explained the need for funding to provide services to shareholders not currently served by any federally recognized Tribe.

### Basis for Reallocation

In its original decision, Treasury selected IHBG formula area population as the relevant measure of population because this measure provides several advantages.  Formula areas correspond broadly to the area of a Tribal government's jurisdiction and other areas to which the Tribal government's provision of services and economic influence extend.  Adjustments are made to address issues of overlapping jurisdiction, and the data are easily accessible and regularly maintained by HUD, which allowed for immediate disbursement.  For many Tribes, this data, in conjunction with employment and expenditure data used to allocate the remaining 40% of the CRF funds reserved for Tribal governments, provided a reasonable proxy for estimating the increased expenditures for each Tribe.  However, Treasury recognizes that, although IHBG formula area population counts may typically be helpful in estimating a Tribal government's increased expenditures, in certain instances they may prove insufficient.  That is particularly true where the Tribe does not have a formula area (e.g., because it does not have a reservation or other area over which it exercises jurisdiction or is responsible for the provision of services), and therefore has a formula area population of zero.  Even for Tribes that do have formula areas, their formula-area population may not provide a sufficiently accurate indication of the number of persons for whom the Tribe provides services more generally, including the many different health and social services provided during the public health emergency.  For example, certain Tribes may also be providing COVID-related assistance to enrolled members living outside of Tribal lands.

For these reasons, and in recognition of court orders recognizing this potential for under-counting, Treasury has elected to reconsider its prior decision in part and reallocate a portion of the remaining, unpaid CRF funds pursuant to a new methodology that accounts for certain scenarios in which IHBG formula area population counts might prove insufficient.  Where there is an especially large disparity between formula area population and enrollment figures, the difference suggests that the Tribal government has a need for funding to provide services to a significant number of people who are not reflected in its formula area population.  For these Tribal governments, formula area population is less likely to be an accurate proxy for increased expenditures.  This reallocation will provide additional payments when there is a substantial disparity between the Tribe's IHBG formula area population count and its Tribal enrollment count.

---

[5] See Shawnee Tribe v. Mnuchin, 984 F.3d 94, 102-03 (D.C. Cir. 2021).

In order to determine which Tribes may have received a payment that significantly undercounted their potential expenditures, Treasury will compare the IHGB formula area population against enrollment data recently collected by the Bureau of Indian Affairs (BIA).  If a Tribe did not provide its enrollment data in response to BIA's solicitation, Treasury will use the enrollment data provided by the Tribe in response to Treasury's April 2020 solicitation or, if the Tribe did not respond to that solicitation, to the enrollment data available in HUD's IHBG data.  The funds available for reallocation are limited and therefore only the most substantial disparities can be addressed.  As described below, Treasury will calculate a population-to-enrollment ratio for each federally recognized Tribe and provide additional payments to those in the 85th percentile and above.  Although the precise funding needs of Tribes cannot be determined with precision, Treasury determined that payments to Tribes above this threshold—including the three Tribes which, according to a federal court, were likely to prevail on their challenge to the original methodology—would provide additional assistance to those with the greatest need based on the circumstances discussed above while still retaining sufficient allocations for ANCs to allow them to provide assistance to their shareholders.

ANCs are not included in the reallocation calculations below and will not receive additional payments as a result of the reallocation.  As stated above, Treasury is performing the reallocation to address a specific feature of the use of IHBG data.  The concept of enrollment is not applicable to ANCs and, more specifically, the issues with the use of formula area population discussed above do not apply to ANCs.

Treasury acknowledges that the remaining, unpaid CRF funds reserved for Tribal governments were previously allocated to ANCs.  However, under the new methodology, more than $450 million will still be allocated to ANCs (including the funds allocated to them under the population-, employment- and expenditure-based allocations).  In their consultation with Treasury, ANCs discussed the services that they provide to their Native shareholders throughout Alaska, including assistance provided as a result of the public health emergency.  Treasury is mindful of the role that ANCs have in providing critical support to their members.

The question of ANCs' eligibility for CRF funding is currently before the Supreme Court.  The methodology below assumes ANCs are eligible for payments from the CRF.  Treasury is considering the methodology by which Treasury would reallocate remaining amounts now allocated to the ANCs in the event that ANCs are determined to be ineligible for payments from the CRF.

### *Reallocation Calculation*

Treasury will use the following methodology to reallocate funds to certain Tribes.

Treasury will determine the set of Tribes for which Treasury will provide an additional payment by calculating each Tribe's ratio of IHBG formula area population to enrollment and then subtracting that ratio from 1.  This is the Tribe's population-to-enrollment ratio.  The top 15 percent of Tribes as ranked by this ratio (i.e., the 85th percentile) will be eligible for an additional payment.

Treasury will determine the amount each such Tribe will receive by first calculating the amount such Tribe would have received under an enrollment-based allocation.  Treasury will do this by calculating each Tribe's pro rata share of the amount of the population-based allocation available for Tribes in the aggregate, excluding the population-based allocation to ANCs.  These payments will be linearly phased out such that the Tribe with the highest population-to-enrollment ratio will receive the largest percentage of the difference between the amount it would have received under the enrollment-based allocation and the IHBG formula area population-based allocation.

Treasury will allocate specific amounts to Tribes in accordance with this methodology and will begin making payments promptly thereafter.