# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE SHAWNEE TRIBE,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY, et al.<br><br>*Defendants*. | Case No. 1:20-cv-01999-APM |
| THE MICCOSUKEE TRIBE OF INDIANS OF FLORIDA,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY and UNITED STATES OF AMERICA,<br><br>*Defendants*. | Case No. 1:20-cv-02792-APM |
| PRAIRIE BAND POTAWATOMI NATION,<br><br>*Plaintiff*,<br><br>v.<br><br>STEVEN T. MNUCHIN, in his official capacity as SECRETARY, U.S. DEPARTMENT OF TREASURY<br><br>*Defendant*. | Case No. 1:21-cv-012-APM |

**PLAINTIFF MICCOSUKEE TRIBE'S SECOND AMENDED
COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiff, The Miccosukee Tribe of Indians of Florida ("Miccosukee" or "Miccosukee Tribe"), a federally recognized Indian tribe and a Tribal government, by and through undersigned counsel, hereby asserts as follows:

## INTRODUCTION

1. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. 116-136, 134 Stat. 281 (2020), was signed into law on March 27, 2020, to provide economic relief for American workers, families, small businesses, and Tribal, state, and local governments impacted by the COVID-19 pandemic.

2. Pursuant to Title V of the CARES Act, Congress appropriated $8 billion in direct aid to Tribal governments ("Title V Funds"). *See* CARES Act, Title V (codified at 42 U.S.C. § 801(a)(2)(B)).

3. The CARES Act directed the United States Secretary of Treasury to allocate Title V Funds to Tribal governments "based on increased expenditures of each such Tribal government" for fiscal year 2020 relative to aggregate expenditures in fiscal year 2019 by the Tribal government.

4. The CARES Act also directed the Treasury Secretary to consult with Tribal governments and the United States Secretary of the Interior to determine the manner by which Title V Funds would be allocated to Tribal governments.

5. The Treasury Secretary relied on a population-based formula to distribute 60 percent of the Title V Funds ($4.8 billion) to Tribal governments ("Population Distribution"). According to the Treasury Secretary, he relied on a population-based formula because, "Tribal population is expected to correlate reasonably well with the amount of increased expenditures of Tribal governments related directly to the [COVID-19] public health emergency, such as increased

costs to address medical and public health needs." *See* Exhibit 1 (*Coronavirus Relief Fund, Allocations to Tribal Governments*, U.S. Dep't of the Treasury, p. 2 (May 5, 2020)).[1]

6.      The Treasury Secretary's population-based formula, however, was demonstrably incorrect. The formula set the Miccosukee Tribe's population at zero when, in fact the Tribe's population at that time was 605. Based on the Treasury Secretary's formula, the Miccosukee Tribe received a Population Distribution of only $100,000, which was the minimum distribution assigned to "the smallest Indian Tribes . . . with a population of less than 37." *See* Exhibit 1, p. 2.

7.      The Treasury Secretary's determination that the Miccosukee Tribe had a population of zero was contradicted by numerous other sources of population data in his or his delegates' possession, or available to him or his delegates, at the time of the Population Distributions.

8.      At the time of the Population Distributions, the Treasury Secretary and his delegates knew, or should have known, that the Miccosukee Tribe did not have a population of zero.

9.      At the time of the Population Distributions, the Treasury Secretary and his delegates knew, or should have known, that a Population Distribution of $100,000 to the Miccosukee Tribe did not correlate, in any way, with the Miccosukee Tribe's increased expenditures related to the COVID-19 pandemic.

10.     The Treasury Secretary's reliance on demonstrably incorrect population data was arbitrary and capricious. As a result, the Treasury Secretary failed to fulfill the CARES Act requirement to distribute Title V Funds to Tribal governments based on increased expenditures.

11.     On May 13, 2021, Treasury distributed another $825,196 in Title V Funds to the Miccosukee Tribe. Treasury stated that it made the distribution in response to this Court's ruling

---

[1] Available at: https://home.treasury.gov/system/files/136/Coronavirus-Relief-Fund-Tribal-Allocation-Methodology.pdf (last visited July 25, 2020).

that the Miccosukee Tribe and two other Tribes were likely to succeed on the merits of their claim that Treasury had acted arbitrarily and capriciously. The additional distribution of $825,196 fell far short of a complete remedy for the Miccosukee Tribe's claim. In addition, the Treasury decision that led to the May 13 distribution was itself arbitrary and capricious.

## JURISDICTION AND VENUE

12. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1362. The Miccosukee Tribe, a federally recognized Indian tribe and a Tribal government, asserts civil claims arising under the laws of the United States, including the CARES Act, to provide remedies set forth in the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201.

13. The allegations of the First Amended Complaint give rise to an actual controversy within the meaning of 28 U.S.C. § 2201.

14. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(e)(1) because this lawsuit names as defendants an agency of the United States and the United States, which reside in this District.

## PARTIES

15. Plaintiff, the Miccosukee Tribe, is a federally recognized Indian tribe and a Tribal government, which provides essential governmental services to its approximately 605 enrolled members living on and off the Miccosukee's tribal lands. The Miccosukee Tribe brings this action to assert and protect its own rights, and the rights of its members.

16. Defendant, the United States Department of the Treasury ("Treasury"), is an agency of the United States whose actions are challenged in this case.

17. Defendant United States of America is named as a defendant pursuant to 5 U.S.C. §§ 702-703, because this is an action for judicial review of actions of one or more agencies of the United States that have affected Plaintiff adversely.

## RELEVANT BACKGROUND

**A.  The CARES Act required the Treasury Secretary to distribute funds to Tribal governments based on their increased expenditures related to the COVID-19 pandemic.**

18. The CARES Act was enacted to provide economic relief for, among many other individuals and entities, Tribal governments impacted by the COVID-19 pandemic. *See* Pub. L. 116-136, 134 Stat. 281 (2020).

19. Pursuant to Title V of the CARES Act, Congress appropriated $8 billion in direct aid to "Tribal governments." *See id.*, Title V, § 5001, amending the Social Security Act (codified at 42 U.S.C. § 801(a)(2)(B)).

20. The CARES Act defines "Tribal governments" as "the recognized governing body of an Indian tribe." *See* 42 U.S.C. § 801(g)(5).

21. The Miccosukee Tribe is a federally recognized Indian Tribe and is a Tribal government, as defined by the CARES Act.

22. The CARES Act required the Treasury Secretary to consult with Indian Tribes and the Interior Secretary to determine how to allocate Title V Funds to Tribal governments.

23. The CARES Act required the Treasury Secretary to allocate Title V Funds to Tribal governments based on their increased expenditures for fiscal year 2020 relative to their fiscal year 2019 expenditures. Specifically, the CARES Act states:

> From the amount set aside under subsection (a)(2)(B) for fiscal year 2020, the amount paid under this section for fiscal year 2020 to a Tribal government **shall be the amount** the Secretary shall determine, in consultation with the Secretary of the Interior and Indian Tribes, **that is based on increased expenditures of each such Tribal government** (or a tribally-owned entity of such Tribal government) **relative**

**to aggregate expenditures in fiscal year 2019 by the Tribal government** (or tribally-owned entity) . . . .

See 42 U.S.C. § 801(c)(7) (emphasis added).

**B.      Treasury solicits information, including population information, from Tribal governments.**

24.     On April 2, 2020 and April 9, 2020, representatives of Treasury and the U.S. Department of the Interior ("Interior") held telephonic consultation sessions during which federal officials heard from representatives of Tribal governments from across the United States. Treasury also solicited written comments from Tribal governments regarding their views on potential methodologies for the allocation of CARES Act funds.

25.     On April 13, 2020, Treasury published a form entitled "Certification for Requested Tribal Data" on its website. This certification form sought individualized enrollment data from all 574 federally recognized Tribal governments. *See* Exhibit 2.

26.     The Miccosukee Tribe provided the requested data to Treasury prior to Treasury's April 17, 2020, deadline. The Miccosukee Tribe timely certified its "Actual Tribal Enrollment Metric" of 605. *See* Exhibit 3.

**C.      Treasury uses demonstrably incorrect population data to distribute Title V Funds to Tribal governments and failed to distribute such funds based on increased expenditures.**

27.     On May 5, 2020, Treasury Secretary Mnuchin and Interior Secretary Bernhardt issued a joint press release announcing an agreed plan for allocating Title V funds to Tribal governments. *See* Exhibit 4 (*Joint Statement by Secretary Steven T. Mnuchin and Secretary of the Interior David L. Bernhardt on Distribution of Coronavirus Relief Fund Dollars to Native American Tribes* (May 5, 2020).[2]

---

[2]  Available at: https://home.treasury.gov/news/press-releases/sm998 (last visited July 25, 2020).

28. Under the agreed plan, Treasury split the $8 billion of Title V Funds into two allocations. The first allocation would distribute 60-percent of the $8 billion ($4.8 billion) "based on tribal population" ("Population Distribution"). According to Treasury, "Tribal population [was] expected to correlate reasonably well with the amount of increased expenditures of Tribal governments related directly to the [COVID-19] public health emergency, such as increased costs to address medical and public health needs." *See* Exhibit 1, p. 2.

29. Under the agreed plan, Indian tribes with a population of less than 37 members would receive a minimum Population Distribution of $100,000. *See* Exhibit 1, p. 3.

30. Under the agreed plan, the Population Distributions were based "on population data used in the distribution of the Indian Housing Block Grant," ("IHBG Data"), by the Department of Housing and Urban Development ("HUD"). *See* Exhibit 1, pp. 2-3.

31. According to Treasury, it used IHBG Data to determine Population Distributions because it believed such data was a "reliable and consistently-prepared" metric. *See* Exhibit 1, p. 2.

32. The IHBG Data contains multiple population counts for each tribe. *See* Exhibit 5.[3]

33. The first population count contained in the IHBG Data is based on Census data for the racial category "American Indian/Alaskan Native" ("AIAN Population Count"). *See* Exhibit 5; Exhibit 1, p. 2 & fn. 10.

34. Treasury based its Population Distributions to Tribal governments on the AIAN Population Count as listed in the IHBG Data. *See* Exhibit 1, p. 2 & fn. 10.

---

[3] Also available at:
https://www.hud.gov/sites/dfiles/PIH/documents/FY%202020%20Final%20Summary%20-%20Needs%20and%20Allocation.pdf (last visited July 25, 2020).

35.     The IHBG population data listed twenty-five federally recognized Indian tribes, including the Miccosukee Tribe, as having an AIAN Population Count of zero. *See* Exhibit 5, p. 6.

36.     In addition to the AIAN Population Count, the IHBG Data contains population counts based on "Enrollment" and "Total Service Area Indian Population" ("TSAIP") for each tribe. *See* Exhibit 5.

37.     The IHBG Data lists the Miccosukee Tribe's Enrollment as 400 and its TSAIP as 589. *See* Exhibit 5, p. 6.

38.     In addition to these Enrollment and TSAIP population counts, at the time of the Population Distributions the Treasury Secretary had available to him: (a) tribal population information provided directly by the Miccosukee Tribe; (b) tribal population information maintained by Interior; and, (c) tribal population information maintained by Treasury.

39.     At no time prior to its May 5, 2020, announcement did Treasury advise the Miccosukee Tribe that it intended to use the AIAN Population Count to allocate Title V funds to Tribal governments.

40.     At the time of the Population Distributions, Treasury knew, or should have known, that the Miccosukee Tribe did not have a population of zero.

41.     On May 5, 2020, the same day it announced its formula for allocating CARES Act funds, the Treasury Secretary and the Interior Secretary announced the first distribution of funds to Tribal governments.

42.     Based on Treasury's reliance on a demonstrably incorrect AIAN Population Count, the Miccosukee Tribe received a Population Distribution of only $100,000, which was the minimum distribution Secretary Mnuchin assigned to "the smallest Indian Tribes . . . with a population of less than 37." *See* Exhibit 1, p. 2.

43. The Miccosukee Tribe, at all times relevant to this matter, had a population significantly greater than 37, and significantly greater than zero.

44. As a result of Treasury's reliance on the demonstrably incorrect AIAN Population Count, the Population Distribution the Miccosukee Tribe received was not based on its increased expenditures arising from the COVID-19 pandemic.

**D.    The Miccosukee Tribe sought to correct Treasury's erroneous Population Distributions.**

45. Upon learning that Treasury based Population Distributions on demonstrably incorrect AIAN Population Counts, the Miccosukee Tribe sought to correct Treasury's mistake through consultation with U.S. government representatives.

46. On May 19, 2020, the Miccosukee Tribe sent a letter to President Donald Trump and Secretary Mnuchin requesting that they correct the mistake in the Population Distribution to the Miccosukee Tribe arising from Treasury's use of the AINA Population Count.  *See* Exhibit 6.

47. On May 28, 2020, several Members of the U.S. Congress sent a letter to Secretary Mnuchin requesting that he correct the mistakes in the Population Distributions arising from Treasury's use of the AIAN Population Count.  *See* Exhibit 7.

48. The Miccosukee Tribe also pursued other avenues of recourse, including consultations with White House staff, Treasury staff, Interior staff, staff of U.S. Senator Rick Scott, and staff of U.S. Senator Marco Rubio.

49. The U.S. government representatives with whom the Miccosukee Tribe consulted indicated that Treasury had realized its mistake and was working on a potential solution.

50.     On June 12, 2020 Treasury announced its distribution of the remaining 40-percent ($3.2 billion) of Title V Funds.  *See* <u>Exhibit 8</u> (*Coronavirus Relief Fund Allocations to Tribal Governments Updated* (June 17, 2020)).[4]

51.     When it distributed the remaining $3.2 billion of Title V funds, Treasury did not correct the problem it created by basing Population Distributions on demonstrably incorrect AIAN Population Counts.

**E.     Treasury's clear error and unwillingness to correct his error have hindered the Tribe's ability to respond to the COVID-19 pandemic.**

52.     In determining Population Distributions, the Treasury Secretary arbitrarily and capriciously relied on the IHBG Data's demonstrably incorrect AIAN Population Count which listed the Miccosukee Tribe's population as zero.

53.     As a result, the Miccosukee Tribe received a Population Distribution of only $100,000, which bore no relationship to its increased expenditures related to the COVID-19 pandemic.

54.     Had the Treasury Secretary used reliable Tribal population information in determining Population Distributions – which was in his possession or available to him and his delegees at the time of such distributions – the Miccosukee Tribe would have received a Population Distribution of approximately $2 million.

55.     The Treasury Secretary's reliance on the demonstrably incorrect AIAN Population Count grossly undercounted the Miccosukee Tribe's population by nearly 570 members, or approximately 98 percent – assuming Treasury determined the Tribe had at least 37 members.

---

[4] Available at: https://home.treasury.gov/system/files/136/Tribal-Allocation-Methodology-for-Second-Distribution.pdf (last visited July 24, 2020).

56. The Miccosukee Tribe has incurred significant medical and public health expenses in responding to the COVID-19 pandemic, and it continues to provide essential services to its citizens residing on and off its Tribal lands.

57. The Treasury Secretary's reliance on the AIAN Population Count – despite possessing information confirming that such count was incorrect – was arbitrary and capricious, and has caused direct injury to the Miccosukee Tribe by drastically reducing the Tribe's Population Distribution.

58. On April 26, 2021, the Court issued a preliminary injunction, holding that the Miccosukee Tribe was likely to succeed on the merits of its claim that Treasury had acted arbitrarily and capriciously.

59. On May 13, 2021, Treasury distributed another $825,196 in Title V Funds to the Miccosukee Tribe. Treasury calculated the distribution based upon a methodology that the agency publicly announced on April 30, 2021. *See* Exhibit 9 (*Coronavirus Relief Funds Allocations to Tribal Governments* (April 30, 2021)).

60. In its April 30 announcement, Treasury stated that it made the distribution in response to this Court's ruling that the Miccosukee Tribe and two other Tribes were likely to succeed on the merits of their claim that Treasury had acted arbitrarily and capriciously in issuing the original distributions to those Tribes. Exhibit 9, p.2.

61. In its April 30 announcement, Treasury also made clear that it still viewed a tribe's population as the proper proxy for a tribe's increased relative expenditures, which the CARES Act directs the agency to defray through the distributions. Treasury characterized the April 30 methodology as a means to remedy particularly significant undercounts of tribal populations under the original methodology, on the ground that the undercounted populations were not an accurate

proxy for increased relative expenditures. Treasury characterized its new distribution decisions under the April 30 methodology as a reconsideration, in part, of its prior distribution decisions. According to Treasury, the agency reconsidered the prior distribution decisions for, adjusted the populations of, and made new distributions to, 15% of the tribes under the new methodology. The Miccosukee was one of those tribes. Treasury did not reconsider the prior distribution decisions for the remaining 85% of the tribes. Exhibit 9, p.2.

62. In its April 30 announcement, Treasury conceded that its new distributions would only be a percentage of the amount that would have been distributed to the severely-undercounted tribes at issue if the agency had calculated the payment amount based upon a tribe's actual enrollment data. Exhibit 9, p.3. The Miccosukee Tribe is one of those severely-undercounted tribes. Treasury's additional distribution of $825,196 fell far short of a complete remedy for the agency's arbitrary and capricious zero-population decision. The additional distribution was less than half of the amount that other tribes with an equivalent population received in May 2020. Accordingly, the harm from the zero-population decision persists, and a live controversy over that decision remains before this Court.

## COUNT I
### (Declaratory and Injunctive Relief—May 2020 Distribution Decision
### 5 U.S.C. § 706(2)(A) and 28 U.S.C. §§ 2201-2202)

63. The Miccosukee Tribe restates and re-alleges the preceding paragraphs as if fully stated herein.

64. The Administrative Procedure Act ("APA") authorizes judicial review of agency actions. 5 U.S.C. § 702.

65. The APA directs a Court to set aside agency actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

66. The Treasury Secretary's May 2020 Population Distribution Decision, through which the agency distributed $100,000 to the Miccosukee Tribe, was an "agency action" within the meaning of 5 U.S.C. § 551(13) because it was a "grant of money [or] assistance" within the meaning of 5 U.S.C. § 551(11)(A).

67. The Treasury Secretary's May 2020 Population Distribution Decision, through which the agency distributed $100,000 to the Miccosukee Tribe, was a final agency action within the meaning of the APA because that decision was the consummation of the agency's decisionmaking process and because it was an action that determined rights or obligations, and from which legal consequences flow.

68. Treasury's decision to adopt the AIAN Population Count, as listed in the IHBG Data, as the basis of calculating the Population Distributions, was arbitrary and capricious under the APA.

69. Treasury's rationale for adopting the AIAN Population Count was based on unreasonably inaccurate inferences, including: (i) that the AIAN Population Count allegedly is "reliable and consistently-prepared"; (ii) that the AIAN Population Count allegedly captures Tribal population; (iii) that Tribal governments allegedly are familiar with and scrutinize the AIAN Population Count and other IHBG Data; and, (iv) that the AIAN Population Count allegedly was a reasonable approximation of increased expenditure by Tribal governments.

70. The AIAN Population Count is demonstrably incorrect as it lists the Miccosukee Tribe's population as zero, contradicts the Enrollment and TSAIP population counts for the Miccosukee Tribe listed *on the same page* of the IHBG Data, and contradicts other Tribal population data in the possession of, or available to, the Treasury Secretary at the time of the Population Distributions.

71. Even if Treasury's reliance on and use of the AIAN Population Count for calculating the Population Distributions had not been arbitrary and capricious per se, considering the demonstrably and facially incorrect population number of zero for the Miccosukee Tribe, the Treasury Secretary's failure to use readily available and accurate data documenting the Miccosukee Tribe's actual population was arbitrary and capricious.

72. Treasury had possession of and access to the Miccosukee Tribe's population data from four separate sources: (1) the Miccosukee Tribe, which provided population data to the Treasury Secretary at his request; (2) IHBG Data which listed the Miccosukee Tribe's Enrollment as 400 and its TRSAIP as 589; and (3) tribal population data maintained by Interior, with which Treasury consulted; and, (4) tax information which the Miccosukee Tribe periodically submits to Treasury.

73. The Treasury Secretary ignored this data and instead arbitrarily and capriciously relied on the demonstrably and facially incorrect AIAN Population Count which listed the Miccosukee Tribe's population as zero.

74. In addition to being demonstrably and facially incorrect, the AIAN Population Count of zero was contradicted – *on the same page of the same document* – by the Enrollment population count of 400, and the Total Service Area Indian Population count of 589.

75. Despite its knowledge and admission of such clear error, the Treasury Secretary also arbitrarily and capriciously ignored the Miccosukee Tribe's efforts to correct the Population Distribution mistakes through consultation with U.S. government officials.

76. For all the above reasons, Defendants' actions and inactions in connection with the May 2020 Population Distribution Decision are arbitrary, capricious, an abuse of discretion, or otherwise contrary to law within the meaning of 5 U.S.C. § 706(2)(A). The Miccosukee Tribe is

threatened with imminent, irreparable, injury as it will be unable to avoid significant and irretrievable medical and public health expenses in responding to the COVID-19 pandemic as it continues to provide essential services to its citizens residing on and off its Tribal lands. Because the Tribe will otherwise be left without an adequate remedy, the Court should order the declaratory and injunctive relief described below.

## COUNT II
### (Declaratory and Injunctive Relief—May 2021 Distribution Decision 5 U.S.C. § 706(2)(A) and 28 U.S.C. §§ 2201-2202)

77. The Miccosukee Tribe restates and re-alleges the preceding paragraphs as if fully stated herein.

78. The APA authorizes judicial review of agency actions. 5 U.S.C. § 702.

79. The APA directs a Court to set aside agency actions, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

80. The Treasury Secretary's May 2021 Population Distribution Decision, through which the agency distributed $825,196 to the Miccosukee Tribe, was an "agency action" within the meaning of 5 U.S.C. § 551(13) because it was a "grant of money [or] assistance" within the meaning of 5 U.S.C. § 551(11)(A).

81. The Treasury Secretary's May 2021 Population Distribution Decision, through which the agency distributed $825,196 to the Miccosukee Tribe, was a final agency action within the meaning of the APA because that decision was the consummation of the agency's decisionmaking process and because it was an action that determined rights or obligations, and from which legal consequences flow.

82. The sum of the May 2020 distribution amount ($100,000) plus the May 2021 distribution amount ($825,196) does not rationally relate to the Miccosukee Tribe's increased expenditures in fiscal year 2020 relative to the Tribe's expenditures in fiscal year 2019.

83. The amount per tribal member distributed to the Miccosukee Tribe in May 2021 is lower than the amount per tribal member distributed to other tribes in May 2021 in connection with the methodology announced on April 30, 2021. There is no rational basis for this disparate treatment.

84. The sum of the May 2020 distribution amount ($100,000) plus the May 2021 distribution amount ($825,196) is lower than the amount received in May 2020 alone by other tribes with an accurately-counted population equivalent to that of the Miccosukee Tribe. Such other tribes received no May 2021 distribution because they were not severely undercounted. There is no rational basis for this disparate treatment.

85. For all the above reasons, Defendants' actions and inactions in connection with the May 2021 Population Distribution Decision are arbitrary, capricious, an abuse of discretion, or otherwise contrary to law within the meaning of 5 U.S.C. § 706(2)(A). The Miccosukee Tribe is threatened with imminent, irreparable, injury as it will be unable to avoid significant and irretrievable medical and public health expenses in responding to the COVID-19 pandemic as it continues to provide essential services to its citizens residing on and off its Tribal lands. Because the Tribe will otherwise be left without an adequate remedy, the Court should order the declaratory and injunctive relief described below.

**COUNT III**
**(Declaratory and Injunctive Relief**
**5 U.S.C. § 706(1) and 28 U.S.C. §§ 2201-2202)**

86. The Miccosukee Tribe restates and re-alleges the preceding paragraphs as if fully stated herein.

87. On January 5, 2021, the Court of Appeals for the District of Columbia Circuit reversed the District Court of the District of Columbia's order denying the Shawnee Tribe's motion for a preliminary injunction in a similar case. *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 103 (D.C. Cir. 2021). The Court ordered the District Court to "enter a preliminary injunction promptly." *Id.* It reasoned that "the Shawnee Tribe is likely to succeed in its claim that the IHBG data is not a suitable proxy for "increased expenditures," and stated that the Miccosukee Tribe is similarly situated. *Id.* at 102.

88. In the preliminary injunction issued April 26, 2021, this Court held that the Miccosukee Tribe was likely to succeed on the merits of its claim that Treasury had acted arbitrarily and capriciously with respect to the May 2020 Population Distribution Decision.

89. Although this Court has held that the May 2020 Population Distribution Decision likely is arbitrary and capricious Treasury has failed to cure its error by issuing a sufficient supplemental distribution to the Miccosukee Tribe.

90. Treasury has a mandatory duty to issue CARES Act distributions that satisfy the requirements of the CARES Act and are not arbitrary or capricious. *See* 42 U.S.C. § 801.

91. The CARES Act requires distribution of all funds "not later than 30 days after" March 27, 2020 (*i.e.*, by April 26, 2020). 42 U.S.C. § 801(b)(1).

92. Treasury still has not distributed all of the CARES Act emergency funds more than 12 months after the distribution deadline.

93. The Treasury Secretary's failure to respond adequately to the Miccosukee Tribe's demand for a sufficient additional Population Distribution that would cure the agency's zero-population error was a failure to take an "agency action" within the meaning of 5 U.S.C. § 551(13) because it was a failure to issue a "grant of money" within the meaning of 5 U.S.C. § (11)(A). The Treasury Secretary's failure to make a sufficient additional Population Distribution to the Miccosukee Tribe that would ensure both Population Distributions, collectively, are based upon a non-arbitrary population determination constitutes an agency action unlawfully withheld or unreasonably delayed within the meaning of the Administrative Procedure Act, *id.* § 706(1).

94. Under 5 U.S.C. § 706(1), the Court should issue an injunction compelling Treasury to act consistently with its statutory obligations and disburse funds owed under the CARES Act to the Miccosukee Tribe, which are currently unlawfully withheld and/or unreasonably delayed.

95. The Miccosukee Tribe has no other adequate judicial remedy that is an alternative to the remedies requested in this Complaint.

**PRAYER FOR RELIEF**

Wherefore, The Miccosukee Tribe respectfully requests the Court:

1. Enter an injunction directing Defendants to correct, and increase, the prior Population Awards to the Miccosukee Tribe, using a correct tribal population count, so that its Population Award will be "based on increased expenditures" incurred by the Miccosukee Tribe;

2. Enter an injunction directing Defendants to increase the prior Population Awards to the Miccosukee Tribe to remedy Defendants' unlawful and unreasonable delay in distributing CARES Act funds;

3. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 and 5 U.S.C. § 706 declaring that Treasury's May 2020 and May 2021 Distribution Decisions were arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law;

4.       Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 and 5 U.S.C. § 706(1) declaring that Defendants' failure to take action to sufficiently increase the Population Award to the Miccosukee Tribe was an agency action unlawfully withheld and unreasonably delayed; and

5.       Award the Miccosukee Tribe its reasonable attorney fees, costs, and such other and further relief as the Court deems just and proper.

Dated this 19th day of May, 2021.

/s/ Daniel G. Jarcho
Daniel G. Jarcho (D.C. Bar # 391837)
George B. Abney
Daniel F. Diffley
Jean E. Richmann
**ALSTON & BIRD LLP**
The Atlantic Building
950 F Street, N.W.
Washington, D.C. 20004
Phone: (202) 239-3300
Fax: (202) 239-3333
daniel.jarcho@alston.com

*Counsel for Miccosukee Tribe of Indians of Florida*